No. 85-190

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

_____

IN RE THE MARRIAGE OF
STEPHANIE JOANNE ROBBINS,

       Petitioner and Respondent,

  and

JOSEPH E. ROBBINS, JR.,

       Respondent and Appellant.

_____

APPEAL FROM: District Court of the Sixth Judicial District,
In and for the County of Park,
The Honorable Byron Robb, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Joseph E. Robbins, pro se, Kalispell, Montana

    For Respondent:

        Phillip W. Strope, Helena, Montana

_____

Submitted on Briefs: Sept. 12, 1985

Decided: December 18, 1985

Filed: DEC 18 1985

_____
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Joseph E. Robbins appeals pro se from the judgment and decree of the District Court, Sixth Judicial District, County of Park, finding Joseph delinquent in child support payments owed to Stephanie J. Robbins in the sum of $3,625.00; leaving the care, custody and control of the minor child, Ashley Caldwell Robbins, in Stephanie; modifying Joseph's visitation rights to reasonable times and places upon at least five days written notice and then only under supervised conditions established by Stephanie; ordering Joseph to pay monthly child support to Stephanie in the sum of $125.00 and to pay all necessary medical, hospital, dental and optical care for Ashley until she is of legal age; and fining Joseph $500.00 as well as sentencing him to five days in jail for his contempt of the District Court's previous orders for child support payments. We affirm in part and remand in part.

The Robbins' marriage was dissolved on May 12, 1981. One child was born as issue of the marriage, Ashley Caldwell Robbins. Among other things, the decree of the court at the time of dissolution provided that the best interest of the minor child dictated custody to be with Stephanie, with reasonable rights of visitation to Joseph, and required him to pay $125.00 per month child support, commencing February 1, 1981.

A related proceeding, Cause No. 81-266, was instigated by Joseph on October 2, 1981, seeking to hold Stephanie in contempt for failing to comply with the terms of visitation in the parties' decree of dissolution. On November 5, 1981, the District Court found both parties in contempt, and

ordered Stephanie to permit visitation and Joseph to make the child support payments previously ordered.

On January 17, 1983, Joseph filed a petition for modification of custody, requesting joint custody of the child, with physical custody to be with Joseph nine months and Stephanie three months each year. On April 8, 1983, a motion to dismiss Joseph's petition was filed by Stephanie. Attached to the motion were Stephanie's affidavits averring that Joseph had not paid the required child support or kept her informed as to medical insurance for the child as previously decreed by the court; that he had not kept her informed of his address or residence; and that she had refused Joseph his visitation rights because Joseph's life style involved use of dangerous drugs and because he had previously physically assaulted Stephanie. On April 8, 1983, the District Court denied Stephanie's motion to dismiss.

On April 29, 1983, Stephanie filed consolidated motions to hold Joseph in contempt for failure to make child support payments, to deny his petition for modification, to amend the child visitation portions of the decree, and to award her costs and attorney fees. Stephanie's motions and Joseph's petition were set for hearing on December 2, 1983, continued to December 5, 1983, by stipulation of counsel, and then vacated and continued without time at request of Joseph's attorney.

On July 23, 1984, Joseph's attorney filed a consent to withdraw as counsel, executed by Joseph, together with an appropriate motion, and the court so ordered. Thereafter, Stephanie's attorney noticed up her consolidated motions for hearing and had Joseph personally served.

Shortly before the hearing, Joseph telephoned a Bozeman attorney, McKinley Anderson, about representing him at the hearing, but did not retain him. Anderson, however, did call Stephanie's attorney to seek agreement to a continuance, but the request was refused. Anderson then attempted to notify Joseph, but Joseph's phone had been disconnected. As a result, Anderson notified the clerk of court by phone, and District Judge Byron L. Robb by letter which was received on the day of the hearing.

Joseph called Judge Robb on March 15, 1985, about 20 to 30 minutes before the 2:00 p.m. hearing, spoke of calling Mr. Anderson, and was told the hearing would be held as scheduled as Joseph had been personally served with notice six weeks before.

Joseph was not represented at the hearing by himself or through counsel. Stephanie, however, was present and did testify. Stephanie's testimony essentially restated the facts alleged in her affidavits, referred to above.

Joseph raises five issues for our review:

1. Whether it was in the child's best interest to change her custody from sole custody in Stephanie, with restricted visitation, to joint custody, with her school year spent in her father's residence;

2. Whether it was proper for the District Court to find Joseph in contempt of court and whether § 3-1-523, MCA, is constitutional in that it denies Joseph his constitutional right to appeal a jail term that was imposed upon him;

3. Whether it was proper for the District Court to order Joseph to pay child support for the period the child was absent from Montana;

- 4 -

4. Whether it was proper for the District Court, knowing that Joseph was being denied his right to appear with effective counsel and to confront the witnesses against him, to overturn a previous contempt order against Stephanie and hold Joseph in contempt; and

5. Whether it was proper for the court to accept the fraudulent statements of Stephanie and to allow Stephanie and her attorney to testify concerning Joseph's actions while Joseph was being denied his right to appear and confront the witness.

The first issue raised by Joseph raises two questions: whether the District Court properly denied Joseph's petition for modification of custody and whether it properly amended the child visitation portion of the dissolution decree.

Modification of a custody decree is governed by § 40-4-219, MCA, which provides in part:

(1) The court may in its discretion modify a prior custody decree if it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of entry of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interest of the child and if it further finds that:

(a) the custodian agrees to the modification;

(b) the child has been integrated into the family of the petitioner with consent of the custodian;

(c) the child's present environment endangers seriously his physical, mental, moral, or emotional health and the harm likely to be caused by a change of environment is outweighed by its advantages to him; or

(d) the child is 14 years of age or older and desires the modification.

This Court is mindful that the primary duty of deciding the proper custody of children is the task of the District Court. As a result, all reasonable presumptions as to the

- 5 -

correctness of the determination by the District Court will be made. In re Gore (1977), 174 Mont. 321, 325, 570 P.2d 1110, 1112; Foss v. Leifer (1976), 170 Mont. 97, 100, 550 P.2d 1309, 1311. Due to this presumption of correctness, the District Court's findings will not be disturbed unless there is a mistake of law or a finding of fact not supported by credible evidence that would amount to a clear abuse of discretion. Solie v. Solie (1977), 172 Mont. 132, 137, 561 P.2d 443, 446. The finding must be clearly erroneous. Rule 52(a), M.R.Civ.P. The District Court concluded that no material change of circumstances existed to warrant consideration of a change of custody of Ashley to Joseph, and that to the contrary, to change custody to Joseph even part time would endanger the physical, mental, moral and emotional health and well being of the child. We find that the record of this case supports the determination of the District Court. It did not abuse it's discretion in denying Joseph's petition for modification.

The District Court, however, did modify Joseph's visitation rights. The dissolution decree provided reasonable rights of visitation to the father, with various holidays and other days enumerated for Joseph. In the instant proceeding, the District Court modified Joseph's visitation to reasonable times and places only upon at least five days written notice to Stephanie and then only under supervised conditions so as to protect and guard the safety and return of the child. The court also gave Stephanie the power to establish the terms of the supervised visitations.

Modification of visitation rights is governed by § 40-4-217(3), MCA, which provides:

The court may modify an order granting or denying visitation rights whenever modification would serve the best interest of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral, or emotional health.

Clearly, a District Court has the discretion to modify the noncustodial parent's rights whenever such modification would be in the best interest of the child. By the express terms of the controlling statute, however, the District Court cannot restrict such rights unless it first finds that the existing visitation arrangement seriously endangers the child's physical, mental, moral or emotional health. Matter of Custody of R.L.S. (Mont. 1981), 632 P.2d 703, 705, 38 St.Rep. 1328, 1333; Firman v. Firman (1980), 187 Mont 465, 468, 610 P.2d 178, 180. The record contains no such finding. We, therefore, remand for the District Court to make such a finding for the purpose of a complete record in the District Court. We also hold that the record would support such a finding.

The next two issues raised by Joseph concern the District Court's finding him in contempt for his failure to pay child support in accordance with previous court orders and the constitutionality of § 3-1-523, MCA.

We will first address the District Court's finding Joseph in contempt. As Joseph himself points out, § 3-1-523, MCA, provides that the judgment and orders of the District Court in contempt cases are "final and conclusive," and no appeal may be taken from them. The proper avenue to use to gain review of a contempt order, by this Court, is a writ of certiorari. This Court, in the past, has refused to consider matters of contempt on direct appeal based on § 3-1-523, MCA, and will again do so in this case. Milanovich v. Milanovich

(Mont. 1982), 655 P.2d 959, 961, 39 St.Rep. 1554, 1557; Matter of Estate of Gordon (Mont. 1981), 628 P.2d 1117, 1119, 38 St.Rep. 887, 890; O'Niel v. O'Niel (1979), 184 Mont. 415, 416, 603 P.2d 257, 258.

Joseph next contends that § 3-1-523, MCA, is unconstitutional in that it denies him his constitutional right to appeal a jail term. This issue, however, was not initially raised in the District Court nor was a notice of constitutional challenge ever filed as required by Rule 38, M.R.App.Civ.P. It is fundamental that on appeal a constitutional challenge to a statute cannot be determined, where it was not initially raised in the District Court. Englund v. Englund (1976), 169 Mont. 418, 421, 547 P.2d 841, 842; Spencer v. Robertson (1968), 151 Mont. 507, 511, 445 P.2d 48, 50-1; Clark v. Worall (1965), 146 Mont. 374, 380, 406 P.2d 822, 825. An issue is also not properly before this Court when a notice of constitutional challenge is not properly filed as required by Rule 38, M.R.App.Civ.P. Eschenburg v. Eschenburg (1976), 171 Mont. 247, 253, 557 P.2d 1014, 1017. Clearly, this issue is not properly before this Court and we therefore decline to consider it.

Related to Joseph's contempt arguments is his assertion that the District Court improperly reversed a previous contempt order against Stephanie. The previous contempt order to which Joseph refers is the order of the District Court on October 2, 1981, holding Stephanie in contempt for failing to comply with the terms of visitation in the parties decree of dissolution and holding Joseph in contempt for failing to make the child support payments. As a result, both parties were apparently required to post $500.00 bonds. On November 23, 1982, Joseph moved the court to return his

bond and the court so ordered. In the instant action, the District Court ordered that Stephanie's $500.00 bond be returned to her. It is this action by the District Court which Joseph now attaches error. We find this argument unavailing.

Joseph also contends that he should be "absolved" from child support payments for the period the child was absent from Montana due to Stephanie's concealment. It is true that the original dissolution decree prohibited Stephanie from moving more than 400 miles away. In contravention of the May 1981, dissolution decree, however, Stephanie moved to Rosemont, California, shortly after the dissolution proceeding. Joseph apparently did not know Stephanie's whereabouts until March of 1983, approximately a year and a half later. In finding of fact no. 12, the District Court found that although Stephanie moved more than 400 miles away in contravention of the court's decree, she was prompted to do so by Joseph's failure to support their minor child and by his harassment, threats and improper conduct toward Stephanie.

In support of his argument Joseph cites a number of cases from other jurisdictions that stand for the proposition that a noncustodial parent may not be held in contempt for failure to pay child support during periods the child is improperly removed from the state. See, Wick v. Wick (Ill. 1960), 167 N.E.2d 207; Hasse v. Hasse (Minn. 1950), 45 N.W.2d 383; and Olson v. Olson (N.D. 1949), 38 N.W.2d 32. We find none of these cases controlling.

The flaw in Joseph's argument is that the dissolution decree did not and could not condition the support obligation on the requirement that Stephanie not move more than 400

miles away. On several occasions this Court has spoken out on the moral obligations of parents, and particularly fathers, to support their children. It is the legal as well as the moral duty of a parent to support his minor child and the father is not absolved from the duty by a marriage dissolution. Thus, one's obligation to pay the required money for the support of his infant daughter is not simply an outgrowth of the dissolution nor is it a mere incident thereto, but it is a social and a parental obligation imposed by law. Fitzgerald v. Fitzgerald (Mont. 1980), 618 P.2d 867, 868, 37 St.Rep. 1350, 1352; Woolverton v. Woolverton (1976), 169 Mont. 490, 492, 549 P.2d 458, 459; State ex rel. Lay v. District Court (1948), 122 Mont. 61, 71-2, 198 P.2d 761, 767; Refer v. Refer (1936), 102 Mont. 121, 129, 56 P.2d 750, 753.

We agree with Joseph's contentions that a noncustodial parent should not be held in contempt for nonpayment of child support when payments are made directly to the custodial parent and when the location of the custodial parent is concealed. We, however, do not find those to be the circumstances in the instant case. It is true that there was a period of time in which Joseph was unaware of the location of Stephanie and was therefore unable to make his support payments. Joseph's failure to make support payments, however, was not just confined to that period of time. The record indicates he failed to make the payments both before Stephanie left for California and after he learned of her whereabouts, all the way to the time of the March 1985, hearing.

We also disagree with the assertion that these circumstances absolve one of the duty to pay the support. We therefore hold that the District Court properly ordered

- 10 -

Joseph to make child support payments for the period the whereabouts of Stephanie and Ashley were unknown to Joseph.

The final issue raised by Joseph is whether it was proper for the District Court to accept the fraudulent statements of Stephanie and to allow Stephanie and her attorney to testify concerning Joseph's actions while Joseph was being denied his right to appear and confront the witness by the court's failure to continue the hearing. Joseph places great reliance on the argument that he was somehow prejudiced by the District Court's failure to continue the hearing upon learning 20 to 30 minutes before the hearing that Joseph would not be present. It, however, has long been the law of this state that the matter of granting or denying a continuance is a matter addressed to the sound discretion of the District Court. Section 25-4-503, MCA; Bolich v. Bolich (1982), 199 Mont. 45, 49, 647 P.2d 844, 847; Dean v. Carter (1957), 131 Mont. 304, 308, 309 P.2d 1032, 1034. The District Court informed Joseph in response to his telephone call just prior to the hearing that the hearing would be held as scheduled as Joseph had been personally served with notice six weeks before. We find the District Court did not abuse its discretion by not continuing the hearing.

Joseph also implies that his due process rights were violated by the District Court because it held the hearing in Joseph's absence. The essential elements of due process, however, are notice and the opportunity to be heard. Byrd v. Columbia Falls Lions Club (1979), 183 Mont. 330, 332, 599 P.2d 366, 367. Both of the above elements were satisfied in the instant case. Joseph was given notice of the hearing six weeks in advance and the hearing was held, thus providing him with an opportunity to be heard even though he did not avail

himself of the opportunity.  We hold that Joseph was accorded his due process rights.

We affirm the judgment and decree of the District Court but remand for an additional finding with regard to modification of Joseph's visitation rights consistent with this opinion.  Stephanie will bear her own attorney fees on appeal.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices