No. 87-130

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

In Re the Custody of
A. L. S.,
a minor child.

APPEAL FROM:   District Court of the Twelfth Judicial District,
               In and for the County of Hill,
               The Honorable Chan Ettien, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Marble & Seidlitz; Donald R. Marble, Chester, Montana

        For Respondent:

                James D. Elshoff, Helena, Montana

                                Submitted on Briefs:   Sept. 17, 1987

                                     Decided:   December 3, 1987

Filed:   DEC 3 - 1987

_Ethel M. Harrison_
_____
                    Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

J.S., the natural mother of six-year-old A.L.S., appeals an order of the Twelfth Judicial District in and for the County of Hill, State of Montana, which modified a decree of dissolution of marriage so as to give primary custody of the boy to her former husband, A.E.S., who is the boy's natural father. Various irregularities in the manner by which the District Court received and entertained the father's motion dictate that the order of modification be vacated and this matter be remanded for further consideration.

On December 6, 1982, a decree of dissolution was entered ending the parties' marriage of nearly four years. The decree adopted by reference a property settlement agreement, which also established joint custody of the one son. Under this agreement, the mother was to have custody of the boy during the school months, the father was to have custody during the summer months, and they were to alternate custody at holidays. The record fails to disclose how this arrangement worked prior to the summer of 1985.

By 1985 both parents had moved to the state of Washington. In August of that year, presumably during his rightful period of primary custody, the father moved the boy to Eugene, Oregon, without notifying the mother. When the father's period of custody elapsed and the boy was not returned, the mother filed a felony custodial interference complaint against the father. The father and child were located in Oregon, the mother reassumed custody with the aid of Oregon authorities, and father was extradited to

Washington. He was convicted of felony custodial interference in Washington Superior Court on April 10, 1986. Since his extradition, the father has seen the child only once for two hours in a court-supervised visit during his felony trial.

Mother and child returned in 1986 to the Rocky Boy's Indian Reservation, where she and the boy are enrolled members of the Chippewa Cree tribe. The boy's heritage is calculated by the tribe to be 81/256th part Indian, roughly one-third Indian blood. The father has no Indian ancestry. Mother sought an award of sole custody from the tribal court. The father failed to appear for a hearing. The tribal court ordered that the child should remain in the mother's custody while it investigated the mother's charges that the father had abused the boy. Mother and her new husband both found jobs in Havre, Montana, and rented a modern apartment.

The father located the mother in December, 1986. He demanded to see his son for Christmas but the mother refused the request. On December 23, father filed a motion to modify custody supported by affidavit. The affidavit stated that the father had experienced "numerous and continuous problems" in exercising his visitation rights, that the child was afraid of his mother and her male companions and wished to live with the father, and that the boy's situation had changed significantly since the original decree because the mother was not caring for the son's various health problems. He asserts that the boy's strabismus, a condition in which the eyes do not focus together, is such that it could cost the boy his left eye if not attended to. On the basis of this affidavit, the District Court issued an order on December 24 compelling the mother to appear on January 14,

3

1987 and show cause why the father should not be granted sole custody.

The father filed a second motion on December 31, 1986, requesting the District Court to hold the mother in contempt of court for refusing to abide by the custody and visitation terms of the 1982 dissolution decree. In his supporting affidavit father said he "knows of no reason other than [mother's] willful refusal" why he should not be allowed his visitation and custody rights. He did not apprise the court of his felony conviction in Washington for custodial interference. The father suggested that this motion could be considered during the previously scheduled January 14 hearing. On January 7, 1987, the District Court ordered a second hearing be scheduled on January 29, 1987 for mother to show cause why she should not be held in contempt.

The record contains no affidavits of mailing or of service on the court's two orders. A receipt entered as part of the record shows that father mailed something to the mother on December 24. Mother acknowledges receiving notice of the first hearing in early January. But she could not find an attorney in Havre that would handle her case since father had talked to the attorneys in town. She called the District Judge to tell him that she could not find a lawyer. She apparently misunderstood the judge to say the matter had been continued until January 29. Consequently, she did not appear at the January 14 hearing. The father attended that hearing and testified that since he was concerned about his son's health and had been refused opportunities to see his son, the decree of custody should be modified in his favor. Again it appears from the transcript that the father did not

4

notify the court of his conviction for custodial interference.

The District Court issued an order on January 15, 1987, granting sole custody to the father with reasonable visitation for the mother. No notice of judgment concerning this order was mailed to the mother.

The order of modification and the contempt proceeding against the mother were stayed until February 23, 1987. Mother appeared with counsel at that hearing. The court refused to consider counsel's motion to dismiss father's petition, but considered the hearing to be one to set aside the court's order of modification. Mother and her new husband testified that the boy was attending school on the reservation and was being attended to by physicians and psychologists. They testified that they were working and were providing an adequate home and were not currently on welfare. The father admitted in questioning that he had been convicted of custodial interference, that he and a daughter by another union were currently on welfare, and that he had no job at that time.

On March 4, 1987, the District Court modified its January 15 decree so that the father has custody of the boy during the school months and the mother has custody during the summer months. Beyond that, mother's motion was denied. Counsel for the mother applied for a stay of this new order on March 6, 1987. He argued that the mother is providing a suitable home for the child, that the child is in school in Rocky Boy's, that the father had not been able to provide the court with a home address, and that to change the child's custody while the matter was being appealed would not be in the child's best interest. The court denied that application

5

without providing any reasons. The tribal court then took temporary custody of the child. He remains at the reservation.

Counsel for the mother requests that this Court reverse the District Court and reinstate the custody decree of December 6, 1982. Counsel urges that the District Court's actions were irreparably flawed since the father's affidavit was insufficient to order a hearing to consider modification. He argues further that the court erred by not affording the mother an opportunity to file responding affidavits before ordering the hearing. He argues lastly that the District Court abused its discretion by not providing a new trial on the matter even though it was shown proper grounds for a new trial.

This Court's standard of review on custody matters is a very stringent one. Because the District Court considers all the evidence in such matters firsthand and enjoys the opportunity to observe the witnesses all reasonable presumptions as to the correctness of the District Court's determination will be made. In re the Marriage of Robbins (Mont. 1985), 711 P.2d 1347, 1350, 42 St.Rep. 1897, 1900, citing In re Gore (1977), 174 Mont. 321, 325, 570 P.2d 1110, 1112; Foss v. Leifer (1976), 170 Mont. 97, 100, 550 P.2d 1309, 1311. The District Court's findings will not be disturbed unless there is a mistake of law or a finding not supported by credible evidence and so clearly erroneous as to constitute a clear abuse of discretion. Marriage of Robbins, 711 P.2d at 1350.

It is apparent in this matter that the District Court disregarded certain statutory and jurisdictional prerequisites that must be satisfied before modification of

6

custody can be considered. The first such lapse concerns the service of process. Section 40-4-220, MCA, provides that a motion for modification shall be made by affidavit and that the adverse party shall be given notice of the proceeding and be allowed to file opposing affidavits. Once opposing affidavits are filed, or no opposing affidavit is filed within a reasonable amount of time, the court may act. Its discretion, however, is limited by § 40-4-220(1), MCA, which says in part:

> The court shall deny the motion unless it finds that adequate cause for hearing the motion is established by the affidavits, in which case it shall set a date for hearing on an order to show cause why the requested order or modification should not be granted. (Emphasis added.)

This language restates the law's preference for continuity of custody. See In re the Marriage of Perry (Mont. 1984), 691 P.2d 1384, 1386, 41 St.Rep. 2269, 2271. Proper notice must be served to the adverse party so that that party has an opportunity to respond. Leonard v. Hoppins (1948), 121 Mont. 275, 279, 191 P.2d 990, 991-92. The rule is a very practical one. If the District Court permitted show cause hearings for anything less than the most compelling evidence, after having reviewed affidavits of both parties, there could result such a merry-go-round of custody litigation that the litigants' rights never would be finally adjudicated. Leonard, 191 P.2d at 992.

In the instant case there is no proof that the mother received notification either of the father's custody petition or the show cause order until early January 1987. Father says he mailed the order on December 24, 1986 but he offers

us no affidavit of mailing. All he can offer is the receipt for a certified letter mailed December 24, 1986 and received January 2, 1987, but that receipt does not prove that the notice of the show cause hearing was enclosed. But more importantly the notice of show cause hearing should not have issued less than 24 hours after father filed his motion since mother was not afforded a chance to respond via affidavit. The language of § 40-4-220, MCA, is plain. A motion to modify custody is to be viewed cautiously by the court. Only after the adverse party has filed an opposing affidavit, or has failed to do so within a reasonable amount of time, may the court act. And then it must deny the motion unless there is adequate cause for a hearing. Mother did not receive the benefit of these requirements.

The District Court ordered a show cause hearing without the benefit of all the facts since mother had no opportunity to file an affidavit with the court. The father's affidavit does not show that he had been convicted of custodial interference, it does not state that he was on welfare, and it falsely claims that the mother was on welfare and not interested in getting a job when mother was indeed working. Such blatant discrepancies in the affidavit will not support the action in any ensuing show cause hearing.

The effect of the March 4 order was to reverse the original order of custody giving the father, not the mother, custody during the school year and the mother, not the father, custody during the summer. This attempt at swapping custody schedules under the guise of the modification statute is improper. In re the Marriage of Paradis (Mont. 1984), 689 P.2d 1263, 1264-65, 41 St.Rep. 2041, 2043. Section 40-4-224(3), MCA, states that a joint custody arrangement,

8

which we consider here, may be modified under § 40-4-219, MCA, only to terminate the custodial rights of one of the parents. Marriage of Paradis, 689 P.2d at 1264-65.

The court also erred when it refused to vacate the January 14 proceedings. Sections 25-11-102 and 25-11-103, MCA, establish three bases for ordering a new trial in a bench trial. Those are irregularity of proceedings, surprise or accident, and newly discovered evidence. On the basis of irregular proceedings alone, this case should have been retried.

Lastly, both the mother and the father request an award of attorney's fees on this appeal. Section 40-4-110, MCA, speaks to the applicability of attorney's fees:

> The court from time to time, after considering the financial resources of both parties, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under chapters 1 and 4 of this title and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in his name.

This Court is in no position to determine if either party deserves attorney's fees. We do not have specific findings before us on the parties' respective financial resources. Where there is substantial evidence that one party's resources are far greater than the other's, the District Court, in its discretion, may award attorney's fees. In re the Marriage of Wilson (Mont. 1985), 701 P.2d 1372, 1377, 42

St.Rep. 894, 900.  The question of attorney's fees would be properly directed to the District Court.

We vacate the court's orders of January 15 and March 4, 1987.  We remand the case to the District Court to allow the mother to file an affidavit in response to the father's motions of December, 1986 and for further consideration of father's motions in light of that affidavit.

Vacated and remanded.

_____
Justice

We concur:

_____
_____
_____
Justices


Mr. Justice John C. Sheehy, specially concurring:

I concur in the result here, but I caution that this case appears to be one for a tribal court.

_____
Justice