No. 92-056

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

IN RE THE MARRIAGE OF

DIANNE K. REMICK,
n/k/a DIANNE K. BITNEY,

     Petitioner and Respondent,

  and

DOUGLAS B. REMICK,

     Respondent and Appellant.

APPEAL FROM:   District Court of the Eleventh Judicial District,
               In and for the County of Flathead,
               The Honorable Leif B. Erickson, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Douglas B. Remick, Helena, Montana, Pro Se

     For Respondent:

          Randy K. Schwickert, Attorney at Law, Whitefish,
          Montana

Submitted on Briefs:  December 10, 1992

Decided:  March 2, 1993

Filed:

MAR 2 1993

CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from an order of the Eleventh Judicial District Court, Flathead County, temporarily terminating appellant's visitation with the two children of this marriage. We affirm.

Douglas and Dianne were married in Lincoln County on July 4, 1980. Their sons, Kyle and Cory, were born in 1982 and 1984 respectively. At the time she filed her petition for dissolution in March 1989, Dianne was 35 years old and employed as a medical secretary in Columbia Falls, Montana. Douglas was 48 years old, unemployed and receiving disability benefits from the National Guard for injuries sustained in the line of duty. He had been a bank president until he was "involuntarily terminated" in 1987. Since 1989, Douglas has been living in Helena, Montana.

In July 1989, Douglas and Dianne and their attorneys signed a settlement agreement in which the parties stipulated to temporary joint custody with Dianne as the residential parent; visitation by Douglas on alternate weekends and Wednesday evenings; and $200 a month as child support, paid through Dianne's attorney.

At an attorneys' conference on September 6, 1989, the parties' attorneys agreed to a hearing before a special master, pursuant to Rule 53, M.R.Civ.P. This hearing eventually was scheduled for February 27, 1990.

At the hearing on February 27, both parties were present and represented by counsel. The special master filed a report on April 13, 1990. She found that Dianne's fulltime salary was $13,184,

2

which represented the top of her earning capacity, and that Douglas was earning $600 a month from insurance sales and $539 a month from the National Guard, for a current annual income of $13,668. The master noted also that Douglas has children from a previous marriage, for whom the Montana Child Support Enforcement Division was then withholding $199 a month from his income. She reported that the parties had agreed to joint custody, with Dianne as the residential parent, and to visitation for one weekend per month plus thirty days each summer. This agreement was incorporated in the master's order, which also required Douglas to pay child support at $186.84 per month, subject to adjustment if his income increased, and to pay half the cost of health insurance for the children and half the cost of day care. Finding that the stipulated property division was "conscionable and equitable," she also ordered the parties to transfer property and execute documents as necessary to comply with the terms of their agreement.

Both parties moved to modify the master's report. Dianne claimed that Douglas could return to work in the banking industry at a salary in excess of $40,000 annually but had chosen to remain "underemployed," and that under the Montana Child Support Guidelines the master should impute an annual income of $45,000 to Douglas.

Douglas also filed objections to the master's report, after his attorney, Michael McCabe, withdrew on April 26, 1990. He claimed that Mr. McCabe had agreed to the property division without his consent and that the couple's debts had not been divided

3

fairly. He also stated that he would not pay child support because Dianne was living with her boyfriend, that he wanted the children to live with him, and that he would expect child support from Dianne in the amount of $200 a month.

After a hearing on May 17, 1900, the District Court entered a decree of dissolution, adopting the master's report except that Douglas was ordered to pay $203.80 per month for child support through automatic withholding.

On November 21, 1990, Dianne filed a motion for contempt and order to show cause, stating that Douglas had not reimbursed her for his share of the children's health insurance premium and day care expenses. The court entered its order to show cause on the same day, requiring Douglas to appear on January 2, 1991. Douglas failed to appear on that date, but his new lawyer, Patrick Springer, appeared to request a continuance. The court denied the continuance on the ground that Douglas had not shown good cause for his absence.

In its order of January 2, 1991, the District Court found Douglas guilty of three counts of contempt of the court's decree of May 17, 1990, sentenced him to fifteen days in the Flathead County jail, and imposed a fine of $1,500. The order provided that Douglas could purge himself of contempt by paying Dianne the amounts he owed her for day care and health insurance premiums, plus her attorney's fees, before January 25. Douglas failed to make these payments, and the court issued a warrant for his arrest on February 20, 1991.

4

Douglas posted bond, and on March 22, 1991, his attorney filed a petition for modification of the decree of dissolution, arguing that fraud upon the court authorized the court to set aside its prior judgment and that the time limit in Rule 60(b), M.R.Civ.P., does not apply. In his supporting affidavit, Douglas stated that the settlement agreement incorporated in the decree was "a falsehood and represents a fraud perpetrated upon the court," that he had not been "a part of the negotiations," and that he had not understood that the agreement made him responsible for all marital indebtedness.

The District Court considered Douglas' petition for modification on March 28, 1991, the date set for his appearance on the contempt charges. Both parties were present, accompanied by their attorneys. In its subsequent order, signed on May 2, 1991, the court denied Douglas' petition on the basis that he had failed to establish any of the grounds authorizing the court to set aside a property agreement pursuant to § 40-4-208(3), MCA. It also suspended its previous sentence for contempt, to "provide another opportunity for Mr. Remick to purge himself of the Court's finding of contempt" by paying the $1,201.95 in arrearages determined in the court's January 2 order and remaining current in his obligations for health insurance and day care. The court ordered monthly installments of $200 for five months, plus a final payment of $201.95.

On May 28, 1991, Douglas, through his attorney, filed an emergency petition for enforcement of visitation, stating that he

5

had advised Dianne in January that he wished to take the children for his thirty-day summer visit on June 15, 1991 and that he proposed to take them to his family reunion in Wisconsin at that time, but Dianne insisted that all visitation was to occur in Flathead County. In her response, Dianne said that she did not object to contact between Douglas and the children but was concerned that his proposed visitation was unreasonable "based upon his historic patterns and irresponsibility." A letter from her attorney to Douglas' attorney, dated April 8, 1991, was attached to the response. It stated that Douglas in the past had driven with the children in the car while he was drinking; that he had allowed their half-brother, Ryan, then age thirteen, to drive with the children in the car; and that he had not visited the children since December 27, 1989, on which occasion he failed to bathe them for a week and let them stay up past midnight.

On June 14, 1991, after a hearing attended by both parties and their attorneys, the court issued an order listing conditions under which Douglas could exercise his visitation right that summer, including, among other things, that Douglas was not to consume alcohol while driving or within two hours before driving; that he was not to speak negatively to the children about Dianne; that he was not to allow an unlicensed driver to operate a motor vehicle while the children were in it; and that "the children shall be supervised at all times by a responsible adult." The order also provided that the children were to be returned to Dianne immediately if any violation occurred or if the children wished to

6

terminate the visit for any reason.

On July 9, 1991, Dianne moved for termination of visitation, based on Douglas' alleged violations of the court's order of June 14, 1991 and his refusal to return the children to Dianne. Douglas' fifteen-year-old son Ryan had told Dianne's attorney that on several occasions during the visit, Douglas had consumed alcohol within two hours of driving, that Douglas had often spoken ill of Dianne in the presence of the children, and that Douglas had left the children unsupervised by anyone older than Ryan for several hours each day. Ryan's observations were partially confirmed by Tom Best, Director of Family Court Services for the Eleventh Judicial District, who had interviewed Douglas and Cory, the younger child, at Douglas' parents' home in Kalispell the previous day.

On the same day, July 9, the court issued an order terminating the current visit and authorizing Montana law enforcement personnel to assist Dianne in picking up the children.

On October 11, 1991, Dianne moved for an order requiring Douglas to show why he should not be held in contempt for his willful disregard of the court's orders of May 2 and June 14, 1991, and for an order terminating Douglas' visitation rights on the grounds that visits would seriously endanger the physical, mental, and emotional health of the children. On the same day the court issued an order setting both requests for hearing on November 7, 1991. This order was served on Douglas on October 17, 1991. The hearing subsequently was postponed until November 19.

7

On November 12, 1991, Douglas filed a motion to "dismiss and postpone" the hearing because he had filed a bankruptcy petition and expected hearings on that petition to show that Dianne "from day one has committed contempt, provided false records, and misrepresented statements to this court." Douglas wrote this motion himself, his attorney having withdrawn earlier in November.

The court then issued a minute order announcing that the "hearing on Petitioner Motion for Contempt is hereby reset for December 2, 1991 . . . ." In response, Douglas filed a second motion to dismiss, on November 27, stating that "there is no Contempt intended whatsoever" and "there just weren't sufficient funds available to pay." Further, he asked that "the hearing on the visitation rights be postponed until such time as I am able to obtain Counsel," and that a guardian ad litem be appointed for the children.

Douglas appeared at the hearing on December 2 without counsel. He told the court that because the minute order did not mention the visitation issue, he was prepared only to discuss the contempt charges. He asked again that the hearing be postponed, but the court denied his request on the ground that it had no reason to grant a further continuance.

On Dianne's motion, the court interviewed the two children in camera during the hearing. Based on the record and on the children's testimony, the court found that continued visitation between the children and Douglas would seriously endanger their physical, mental, and emotional health. It issued an order

8

terminating Douglas' visitation rights temporarily, until Douglas had obtained a mental health evaluation, had participated in any recommended counseling and therapy, and had completed a chemical dependency evaluation. If the termination order were rescinded, Douglas could visit the children only with supervision.

The court also found Douglas in contempt for willful violation of the court's order of May 2, 1991, sentenced him to thirty days in the Flathead County jail, and imposed a fine of $3,000. Douglas avoided the sentence and fine by paying the $1,202.95 previously ordered, plus $1,930 in attorney's fees and costs, in April 1992. He appeals the order terminating visitation.

The issues on appeal are (1) whether the District Court failed to give proper notice of the issues to be addressed at the hearing of December 2, 1991, and (2) whether the District Court abused its discretion in denying Douglas' second request for a continuance of that hearing.

I

Douglas argues that he was denied due process of law because the District Court failed to give him notice that termination of his visitation rights would be considered at the hearing of December 2, 1991. His argument is based on the fact that the court's order of November 20, 1991, postponing the hearing until December 2, referred only to Dianne's "motion for contempt."

This argument cannot be taken seriously, in view of Douglas' request, in his November 27 motion to dismiss, that "the hearing on visitation rights" be postponed. Moreover, if he had any doubt as

9

to the scope of the December 2 hearing, he had a duty to inquire to resolve that doubt. Section 1-1-217(2), MCA, provides that:

> Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such facts.

The essential elements of due process are notice and the opportunity to be heard. In re Marriage of Robbins (1985), 219 Mont. 130, 138, 711 P.2d 1347, 1352. In Robbins, we held that both elements were satisfied when the appellant husband was given six weeks notice before the hearing, and the hearing actually was held, giving him an opportunity to be heard. Here, Douglas was served on October 17, 1991, with an order requiring his appearance on November 7 to show cause why he should not be found guilty of contempt and for a hearing on Dianne's motion to terminate his visitation rights. By the time the hearing actually was held, he had had six weeks notice.

We hold that the District Court did not deprive Douglas of his right to due process.

II

A district court may, in its discretion, postpone a trial or proceeding upon good cause shown and in furtherance of justice. Section 25-4-503, MCA. "The denial of a motion for a continuance is within the sound discretion of the District Court and it is not error to deny such a motion unless a clear abuse of discretion is shown." Bolich v. Bolich (1982), 199 Mont. 45, 49, 647 P.2d 844, 847. See also In re Marriage of Concepcion (1984), 212 Mont. 191,

10

687 P.2d 718; Fields v. Wells (1989), 239 Mont. 392, 780 P.2d 1141.

Here, as in Bolich and Concepcion, the record does not disclose any good cause for postponement. The court already had continued the hearing at Douglas' request. Douglas' request for time in which to obtain counsel is not persuasive, as it was written two weeks after he had accepted Mr. Springer's request to withdraw and had filed a separate motion concurring in that request. Further, the court had given Douglas great latitude over a period of more than two years, particularly in allowing him extended time in which to pay his share of his children's health insurance and day care expenses.

Douglas had been found guilty of contempt for nonpayment eleven months before the December 2, 1991 hearing but had avoided payment without penalty. Moreover, the court found, based on substantial evidence, that further visits with Douglas would endanger the children. Prompt action to protect the children and give Douglas an incentive to undergo treatment for alcoholism was clearly indicated.

We hold that the District Court did not abuse its discretion in denying Douglas' motion to postpone the hearing of December 2, 1991.

AFFIRMED.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1988 Internal Operating Rules, this decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result

to Montana Law Week, State Reporter, and West Publishing Company.

_John Conway Harrison_
Justice

We concur:

_J. A. Turnage_
Chief Justice

_____

_____

_____
Justices

12