No. 01-705

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 175

IN RE THE MARRIAGE OF
MARGARET ALVARADO FISHBAUGH,

Petitioner and Respondent,

and

JOHN FISHBAUGH,

Respondent and Appellant.

APPEAL FROM: District Court of the Fifteenth Judicial District,
In and for the County of Sheridan,
The Honorable David Cybulski, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

E. June Lord, Attorney at Law, Great Falls, Montana

For Respondent:

Laura Christoffersen; Christoffersen & Knierim, Culbertson, Montana

Submitted on Briefs: April 11, 2002

Decided: August 8, 2002

Filed:

_____
Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1     John Fishbaugh (John) appeals from the judgment entered by the Fifteenth Judicial District Court, Sheridan County, on its findings of fact, conclusions of law and decree of dissolution.  We affirm.

¶2     John raises the following issues:

¶3     1.  Did the District Court err in denying John's motion to continue the trial?

¶4     2.  Did the District Court abuse its discretion in awarding Margaret Alvarado Fishbaugh (Margaret) sole custody of the parties' daughter?

¶5     3.  Did the District Court abuse its discretion in calculating child support?

¶6     4.  Did the District Court abuse its discretion in ordering John to pay Margaret's attorney fees?

BACKGROUND

¶7     John and Margaret were married on November 16, 1999, and separated approximately five months later.  Margaret gave birth to the parties' daughter on August 31, 2000.  In October of 2000, Margaret petitioned the District Court to dissolve the marriage and determine the custody and support of the child.  The court subsequently entered an order giving Margaret temporary custody of the child and requiring John to pay $294 per month in child support pending a trial on the merits.  Trial was set for June 18, 2001, continued twice and, on July 2, 2001, eventually scheduled for August 20, 2001.

¶8    On August 16, 2001, John's attorney filed motions to withdraw as counsel and to continue the trial.  The continuance was requested on the basis that the attorney had a trial scheduled in federal court on the same date as the trial in this case.  The District Court entered a written order denying the motion for a continuance and stating that John's attorney could be heard on the motion to withdraw at the time set for trial.

¶9    The trial was held as scheduled on August 20, 2001.  Neither John nor his attorney appeared.  Margaret testified and the District Court subsequently entered its findings of fact, conclusions of law and decree of dissolution granting Margaret sole custody of the parties' child and ordering John to pay $294 per month in child support.  It also ordered him to pay Margaret's attorney fees in the amount of $1,000.  The court entered judgment and John appeals.

## DISCUSSION

¶10  1.  Did the District Court err in denying John's motion to continue the trial?

¶11  The decision to grant or deny a motion for a continuance is within the sound discretion of a district court and we review that decision for abuse of discretion.  The moving party must make an affirmative showing that he or she has suffered prejudice as a result of the court's denial of the motion for a continuance.  In re Marriage of Pospisil, 2000 MT 132, ¶ 18, 299 Mont. 527, ¶ 18, 1 P.3d 364, ¶ 18.  The timeliness of a motion to continue is a legitimate factor for the court to consider in determining whether

3

to grant such a motion. In re Marriage of Robbins (1985), 219 Mont. 130, 138, 711 P.2d 1347, 1352.

¶12 The trial in this matter was set for August 20, 2001, and John's attorney moved for a continuance on August 16, 2001, just four days prior to trial. Margaret objected to the continuance and the District Court denied the motion in a written order. At the trial, the court attempted to telephone John's attorney and could not reach her. The court then again denied the motion to continue, stating on the record that it considered the motion untimely as it was unlikely John's attorney did not have advance notice of the scheduling of her federal court trial. Moreover, the court observed the attorney had indicated John had not contacted her for several weeks and, as a result, the attorney "would be here probably with nothing more than her hat in hand and it wouldn't make for much more of a trial and much more benefit to her client, anyway."

¶13 John argues that the District Court abused its discretion in denying his counsel's motion to continue the trial and that he was prejudiced thereby because he was unable to present evidence and cross-examine Margaret at the trial. The District Court based its denial of the motion on the fact that it was filed only four days prior to trial and the court found it unlikely that John and his attorney were unaware of the attorney's scheduling conflict prior to that time.

¶14 John contends his attorney did not know until several days prior to the trial in this matter that her federal court trial

4

actually would go on as scheduled. His attorney's motion makes no reference to this fact, however, and nothing else of record supports his contention in this regard. Nor does he dispute the District Court's statement that his attorney was aware, and could have informed the court, of the potential conflict at an earlier date. Moreover, regarding the prejudice factor, John presents nothing more than conclusory statements that he was prejudiced by the denial of the motion because the District Court relied on a one-sided view of the facts. We conclude that John has failed to establish the District Court abused its discretion in denying his motion to continue the trial and that he was prejudiced thereby.

¶15 John also argues that the District Court's denial of his motion for continuance violated his constitutional right to due process. The essential elements of due process are notice and the opportunity to be heard. Marriage of Robbins, 219 Mont. at 138, 711 P.2d at 1352. Due process is accorded where a party is given sufficient notice of a trial and the trial is held, regardless of whether the party actually avails himself of the opportunity to be heard. Marriage of Robbins, 219 Mont. at 138, 711 P.2d at 1352. Here, John received notice of the trial nearly two months in advance and the trial was held as scheduled. The District Court having accorded John the requisite notice and opportunity to be heard to which he was entitled, we conclude his right to due process was not violated.

¶16 We hold that the District Court did not err in denying John's motion to continue the trial.

¶17 2. Did the District Court abuse its discretion in awarding Margaret sole custody of the parties' daughter?

¶18 The District Court granted Margaret sole custody of the parties' daughter and gave John the right to reasonable visitation at the child's home. John contends the court should have granted joint custody of the child and provided him with less restricted visitation rights.

¶19 We review a district court's child custody determination to determine whether the findings of fact on which the determination is made are clearly erroneous. In re Marriage of McKenna, 2000 MT 58, ¶ 14, 299 Mont. 13, ¶ 14, 996 P.2d 386, ¶ 14. If they are not, we will affirm the court's decision absent a showing that the court committed a clear abuse of discretion. Marriage of McKenna, ¶ 14.

¶20 A district court is required to determine child custody matters in accordance with the best interests of the child, taking into consideration a variety of statutory factors including--but not limited to--the parents' wishes, the interaction and interrelationship of the child with the child's parents, continuity and stability of care, and whether the child has frequent and continuing contact with both parents. Section 40-4-212(1), MCA. While a court must consider the factors enumerated in § 40-4-212(1), MCA, it need not make specific findings relating to each. Marriage of McKenna, ¶ 15.

¶21 Here, the District Court found that Margaret has had custody of the child since she was born, and John has not contacted, or attempted to visit, her. The court further found that, in light of the lack of contact between John and the child, it is in the

6

child's best interest that Margaret be awarded sole custody subject only to reasonable visitation by John at the child's home. The record reflects Margaret's testimony at trial that, although John was present at their child's birth, he has had no contact with her since that time. She further testified that she had made several telephone calls to John to inform him of their child's well-being, but John has never initiated contact to find out about or visit with the child. Consequently, although Margaret believed John should have visitation, she thought the visitation should be in her home until the child has an opportunity to become comfortable around John. Margaret's testimony constitutes substantial credible evidence supporting the District Court's findings in this regard.

¶22 John's argument that the District Court's findings are erroneous is based on his assertions that, had he been able to appear at trial, he would have testified that the only reason he had no contact with the child was because Margaret continually frustrated his attempts to do so, and that her testimony regarding his lack of efforts to contact the child was untrue. The problem with John's argument is that our review of the District Court's findings of fact must be based on the evidence of record and we cannot consider evidence which is extraneous to the record. See Scott v. Scott (1990), 246 Mont. 10, 21, 803 P.2d 620, 627. Based on the evidence before us, we conclude the court's findings of fact regarding custody of the child are not clearly erroneous.

¶23 Moreover, although the District Court did not cite § 40-4-212(1), MCA, in its decree, its findings of fact indicate that the

court did consider the factors set forth in the statute, most notably those pertaining to the wishes of the parents, the continuity and stability of the child's care, and whether the child has frequent and continuing contact with both parents. Based on the evidence of record, we hold the District Court did not abuse its discretion in awarding Margaret sole custody of the parties' daughter.

¶24 3. Did the District Court abuse its discretion in calculating child support?

¶25 We review a district court's child support award to determine whether the court abused its discretion. In re Marriage of Bee, 2002 MT 49, ¶ 19, 309 Mont. 34, ¶ 19, 43 P.3d 903, ¶ 19. Here, the District Court determined that John should pay $294 per month in child support based on an imputed income in the amount of $24,835. John contends that the court abused its discretion in basing the child support award on imputed income.

¶26 At the hearing on temporary child custody and support, John's attorney appeared via telephone and apparently informed the District Court that John's financial records were unavailable at that time. As a result, the court determined temporary child support by imputing income to John based on his job as a semi-truck driver. Relying on Margaret's testimony that she earned approximately $10,700 per year and John's imputed income in the amount of $24,835, the court calculated John should pay $294 per month in temporary child support.

¶27 At the trial on the merits, Margaret testified that, to her knowledge, there had been no change in either parties' employment status since the earlier hearing and that the child support computations made at that time would still be accurate. As stated above, neither John nor his attorney appeared at the trial to offer evidence contradicting Margaret's testimony or otherwise establishing John's financial status; nor did John file any financial affidavits or tax returns establishing that his income was other than the amount originally imputed to him by the court. Consequently, the District Court again calculated John's child support obligation as $294 per month based on his imputed income as a truck driver.

¶28 John argues that the District Court abused its discretion in using imputed income to determine his child support obligation because he had furnished Margaret with a financial affidavit and tax return establishing that his income was approximately $10,000 per year and Margaret had failed to reveal his financial information to the court at the trial. As stated above, however, our review of the District Court's determination must be based on the evidence of record before the court. See Scott, 246 Mont. at 21, 803 P.2d at 627. There is no evidence of record establishing that John's income is other than the amount imputed or that he provided Margaret with his financial information. Consequently, we hold that the District Court did not abuse its discretion in calculating child support.

¶29 4. Did the District Court abuse its discretion in ordering John to pay Margaret's attorney fees?

¶30 At trial, Margaret requested that John pay her attorney fees incurred as a result of the dissolution proceeding and the court ordered John to do so in the amount of $1,000. John argues that no evidence exists to support either the necessity for, or amount of, such an award. He also contends he does not have the financial resources to pay the fees. We review a district court's award of attorney fees in a dissolution proceeding to determine whether the court abused its discretion. Schmieding v. Schmieding, 2000 MT 237, ¶ 22, 301 Mont. 336, ¶ 22, 9 P.3d 52, ¶ 22.

¶31 A district court may order a party to pay the other party's reasonable attorney fees incurred in maintaining and defending a dissolution proceeding after considering the financial resources of both parties. Section 40-4-110(1), MCA. An award of attorney fees must be necessary, reasonable and based on competent evidence. Schmieding, ¶ 25.

¶32 At the temporary child support hearing, the District Court computed child support based on Margaret's testimony that she earned approximately $10,000 per year and John's imputed income as a semi-truck driver in the amount of $24,835. Margaret testified at the trial that she believed there had been no change in either her or John's employment or income status since the earlier hearing. Additionally, Margaret's attorney informed the court at the trial that her normal fee in a dissolution proceeding was $100 per hour and she had worked at least ten hours on this case. We

10

conclude that this testimony constitutes substantial credible evidence establishing both the necessity for, and reasonable amount of, an award of attorney fees. Moreover, in light of the disparity between Margaret's annual income and the income imputed to John as a truck driver, we further conclude that it was reasonable for the District Court to conclude that John could pay Margaret's attorney fees. As a result, we hold that the District Court did not abuse its discretion in ordering John to pay Margaret's attorney fees.

¶33  Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ TERRY N. TRIEWEILER
/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ JIM RICE