No. 88-530

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

IN RE THE MARRIAGE OF

FRANCISCO IVAN MORAZAN,

        Petitioner and Respondent,
  and

VICKI LYNN KENDALL,

        Respondent and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable John M. McCarvel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Cannon & Sheehy; Edmund F. Sheehy, Jr., Helena,
        Montana

    For Respondent:

        Miller & Cook; Joan E. Cook, Great Falls, Montana

Submitted on Briefs: March 31, 1989

Decided: May 5, 1989

Filed:

ED C........... CLERK
MONTANA SUPREME COURT
FILED
'89 MAY 5 AM 10 56

_____
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Appellant Vicki Lynn Kendall (Kendall) appeals the July 13, 1988, order of the Eighth Judicial District Court, Cascade County, modifying a divorce decree entered on January 28, 1984. The modification order removed Kendall's children, M.M. and F.M., from her sole custody and granted joint custody of the children to Kendall and the children's natural father Francisco Ivan Morazan (Morazan), the respondent, with primary physical custody in Morazan. We affirm the modification order of the District Court.

Kendall and Morazan were married in October 1980. At that time Kendall had three children, two sons and one daughter, R.B. These children lived with Kendall and Morazan. Two children were born during the marriage, M.M. in 1981 and F.M. in 1983. In 1983, Kendall made allegations of sexual abuse of R.B. against R.B.'s natural father. These allegations arose in the midst of a custody battle between Kendall and R.B.'s natural father. Investigations by child welfare workers disclosed that R.B. may have been sexually abused by both her natural father and Morazan. The District Court modified custody of R.B., shifting custody from Kendall to R.B.'s natural father. Kendall was permitted reasonable visitation privileges, provided R.B. had no contact with Morazan.

Kendall filed for and was granted a dissolution of her marriage to Morazan. Morazan did not contest the dissolution proceedings, the award of sole custody of their two children to Kendall, or the child support payments of $125 per month per child. The order of dissolution granted Morazan reasonable visitation rights.

Subsequent to the dissolution in January 1984, Kendall began living with one Doug Owens. She later married Owens and moved with him to Lolo, Montana. Morazan exercised his visitation rights and paid the required child support.

In September of 1986, after Owens physically abused Kendall, she contacted Morazan requesting he move her and her children back to Great Falls. Morazan did so, at his own expense, relocating Kendall and the children across the street from his residence. Approximately one month later, Owens moved back in with Kendall, staying approximately six months. Kendall then divorced Owens. She had begun seeing another man, Dale Reeves. After divorcing Owens, Kendall moved with Reeves to Canyon Ferry, Montana, and then to East Helena, Montana.

In February 1988, Kendall had problems with the principal at her daughter's school and with Dale Reeves and called Morazan to help her and her children move back to Great Falls. She felt she needed a "cooling-off period" in her relationship with Reeves. Morazan moved them back to Great Falls to his house where they stayed for a month before Kendall and the children moved to another location in Great Falls.

Morazan testified at the modification hearing that Kendall had confided in him that Reeves' thirteen-year-old son had been physically abusing her. She also told Morazan that her two older boys had been having inappropriate sexual contact with M.M. and that Reeves' son told her sons that he had this type of contact with his sister.

Morazan filed a combination affidavit and petition for modification of custody on May 17, 1988. He also obtained a temporary restraining order to prevent Kendall from removing their children from the jurisdiction of the court.

On May 23, 1988, Kendall removed M.M. from the kindergarten she was attending in Great Falls and moved both children to East Helena where they moved back in with Reeves. At the time of the June 7, 1988, hearing, which Kendall attended without counsel, she was living with Reeves and five children in a two bedroom apartment. The District Court found cause to hold a hearing regarding Morazan's petition for modification of custody and set a hearing date for June 16, 1988.

Between the date of the June 7, 1988, hearing and the June 16, 1988, hearing, M.M. reportedly confided to Kendall that Morazan had sexually abused her. Kendall reported this to Lewis and Clark County authorities, who determined not to file any charges before the modification hearing. At the hearing, both parties testified and presented additional witnesses. The judge also interviewed M.M. in his chambers at the end of the hearing.

The court issued its findings of fact, conclusions of law, and order on July 13, 1988. The court concluded that the children's existing environment constituted serious endangerment to their mental, moral, and emotional health; that the harm likely to result from a change in their environment was outweighed by the advantages of the change; and that modification of the custody order contained in the divorce decree was in the best interests of the children. The court then modified the custody order, granting joint custody, placing primary physical custody with Morazan, and ordering no child support. It is from this order of the court that Kendall presents the following issues on appeal:

1. Did the District Court err in issuing the temporary restraining order and holding the show cause hearing on the petition to modify custody?

4

2. Does substantial credible evidence exist to support the District Court's order modifying custody?

The first issue Kendall raises is that the District Court erred in issuing a temporary restraining order restricting her from removing the children from the jurisdiction of the court. Kendall contends there was no reason for the court to believe she intended to remove the children from the state.

The court issued the temporary restraining order based upon the duly sworn affidavit of Morazan. This affidavit stated that the temporary restraining order was necessary to prevent Kendall from removing the children from the jurisdiction of the court. The affidavit further alleged that Kendall had threatened to remove the children from the court's jurisdiction should Morazan ever seek modification of the custody order. We find that such a sworn statement was sufficient grounds for issuing a temporary restraining order, in light of the circumstances surrounding such proceedings and the minimal inconvenience such an order placed upon Kendall. See § 40-4-220(1), MCA.

Kendall also contends the petition for modification and supporting affidavit failed to provide adequate cause for hearing the motion under § 40-4-220(1), MCA. Kendall claims the reasons presented in Morazan's affidavit were that Kendall had changed her residence on numerous occasions and was on welfare. While these grounds alone would be insufficient to establish adequate cause for a hearing, they were not the only cause contained in the affidavit. The affidavit also stated that Kendall had previously exposed the children to an abusive relationship while married to Owens, a relationship to which she had returned. Further, the affidavit stated that Kendall was currently involved in another relationship which exposed the children to a sexually

5

abusive situation. We conclude these statements constituted adequate cause to order a hearing on the custody status of M.M. and F.M.

Kendall's second issue is whether the evidence introduced at the hearing was sufficient to warrant a modification of the custody arrangement. Initially, we note that the primary responsibility for child custody decisions lies with the District Court. We will presume the District Court's decision is correct and not disturb it unless "there is a mistake of law or a finding of fact not supported by credible evidence." In re Marriage of Robbins (1985), 219 Mont. 130, 134-35, 711 P.2d 1347, 1350, citing Solie v. Solie (1977), 172 Mont. 132, 137, 561 P.2d 443, 446; see also Rule 52(a), M.R.Civ.P. (which provides that a finding must be clearly erroneous before it may be overturned).

A district court must make certain determinations before modifying a prior child custody decision. Section 40-4-219, MCA. First, the court must find, based upon facts arising since the prior decree or unknown to the court at the entry of the prior decree, that a change has occurred in the circumstances of the child or custodial parent which necessitates a modification to serve the best interests of the child. Section 40-4-219(1), MCA. Further, the court must find that the child's present environment seriously endangers the child's physical, mental, moral, or emotional health and that the harm likely to be caused by a change in environment is outweighed by the advantages to the child from such a change. Section 40-4-219(1)(c), MCA.

The record shows that the court had adequate reason to find that circumstances had changed since the dissolution decree issued. Kendall's lifestyle indicated an inability to maintain a stable environment for her children. At the time of the modification hearing, she was living with another

6

adult and five children in a two bedroom apartment. Further, Kendall has shown little concern for M.M.'s education. Her removal of M.M. from kindergarten in Great Falls two weeks before the end of the term shows a lack of regard for the necessity and value of her child's education. These facts, as well as the allegations that M.M.'s stepbrothers sexually abused her, indicate changed circumstances.

These changed circumstances are sufficient to show that the physical, mental, moral, and emotional health of M.M. and F.M. would be seriously endangerd if they remained with Kendall. See § 40-4-219(1)(c), MCA. We therefore agree with the District Court as to the dangers posed by the environment in which Kendall has placed her children. The advantages to the children under Morazan's custody, on the other hand, clearly outweigh any harm which would accompany a change in their environment. Morazan currently lives alone in a two bedroom house with a backyard in which the children may play. He has a stable job with the U.S. Post Office, and he is attending the College of Great Falls in hopes of bettering his life. He has exhibited concern for the children's educational opportunities and the need for testing M.M. for possible learning disabilities. His work and schooling will require baby-sitters to care for his children, but he has made arrangements to secure qualified people to do so.

This Court has some reservations regarding Morazan's fitness as the custodial parent because of allegations that he sexually abused M.M. Proof of the validity of these allegations would clearly result in Morazan being unsuitable to take unsupervised custody of the children. Morazan, however, has denied these allegations. The District Court, questioned because of the timing of the charges as well as Morazan's denial, whether the charges were valid. The court noted that Kendall has been involved in two cases concerning

7

the custody of her children, and in both she has alleged sexual abuse on the part of the natural father. The District Court was in the best position to question and observe Kendall and M.M., and we therefore yield to its evaluation of the validity of the sexual abuse charges.

The modification order of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Mr. Justice John C. Sheehy did not participate in this opinion.

8