No. 96-444

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

IN RE THE MARRIAGE OF

DAVID HEINE,

Petitioner and Appellant,

and

LAURA HEINE,

Respondent and Respondent.

FILED

FEB 06 1997

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Diane G. Barz, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Donald L. Harris; Crowley, Haughey, Hanson,
Toole & Dietrich, Billings, Montana

For Respondent:

Mark D. Parker, Nicole A. Temkin; Parker Law
Firm, Billings, Montana


Submitted on Briefs: December 5, 1997

Decided: February 6, 1997

Filed:

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

Appellant David Heine appeals the December 1, 1995 Order of the Thirteenth Judicial District Court, Yellowstone County, awarding sole legal custody of the parties' two children to Laura Heine. We reverse and remand to the District Court.

We consider the following issue on appeal:

> Did the District Court err by awarding Laura Heine sole legal custody of the parties' children on the basis that David Heine presented a danger to the children?

## Factual and Procedural Background

Laura and David Heine were married in 1983 and subsequently had two children, Jenna, born in 1986, and Brandon, born in 1988. In 1993 Laura and David Heine separated. In their separation agreement, the parties agreed to joint legal custody of the children, with Laura having temporary residential custody of the children during the separation period. Each party reserved their right to seek primary residential custody of the children at a later date. The separation agreement was first incorporated into the parties' final decree of separation, and then later into their final decree of dissolution.

2

After the dissolution, Laura and David agreed to alternate physical custody of their children each week. After two years of such arrangement David filed a motion to modify custody in which he sought primary residential custody of the children. Subsequently, Laura moved for an order seeking a full custody evaluation and for a hearing to determine permanent custody. Prior to hearing the matter, the District Court ordered a court services investigation and custody evaluation.

A hearing was held November 30, 1995 during which both parties sought primary residential custody of the children. Neither party sought termination of the joint legal custody arrangement. The court services report, which was admitted into evidence, contained the investigator's recommendation that the "parents shall continue to maintain Joint Legal Custody of their children . . . ." David Heine presented evidence that certain persons made reports to the Department of Family Services (DFS) alleging that Laura abused the children. Laura presented evidence that Detta Heine, David's present wife, "coached" the children's testimony regarding the allegations of abuse and was a negative influence on the children. The record reflects that at the conclusion of the hearing David "loudly banged his hand on Counsel table," following Laura's rebuttal testimony.

In its December 1, 1995 Order, the District Court awarded sole legal custody of the children to Laura, with David having visitation only after "proof that David Heine no longer represents a danger to his children." The court based its holding that David

3

Heine was endangering his children on several findings:

> David Heine's refusal to cooperate with Court Services, David Heine's allowing Detta Heine far more influence in the children's lives than is appropriate, David Heine's behavior in the courtroom, and David Heine's attempt through incredible witnesses to prove a case of abuse which had been rejected by two investigators.

The court set a future date for the purpose of discussing appropriate visitation for David Heine and appropriate child support. Before a final hearing on those matters took place, David Heine appealed from the December 1, 1995 Order.

## Standard of Review

The standard of review for a district court's award of child custody is whether the district court's findings are clearly erroneous. In re Marriage of Dreesbach (1994), 265 Mont. 216, 220-21, 875 P.2d 1018, 1021; In re Marriage of Maxwell (1991), 248 Mont. 189, 193, 810 P.2d 311, 313. The findings of fact must be based on substantial, credible evidence, and the court's decision will be upheld unless a clear abuse of discretion is shown. Marriage of Dreesbach, 875 P.2d at 1021. See also In re Marriage of Njos (1995), 270 Mont. 54, 60, 889 P.2d 1192, 1195-96.

In reviewing a district court's conclusion of law, the standard of review is whether the district court's interpretation of the law is correct. Carbon County v. Union Reserve Coal Co. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686; Kreger v. Francis (1995), 271 Mont. 444, 447, 898 P.2d 672, 674.

## Issue

> Did the District Court err by awarding Laura Heine sole legal custody of the parties' children on the basis that David Heine presented a danger to the children?

4

David Heine contends that the District Court's finding that he was seriously endangering the welfare of the children is clearly erroneous and consequently, the court had no basis to award Laura Heine sole legal custody.

This Court has on numerous occasions reviewed the proper standards by which a court can modify or terminate joint custody arrangements. See In re Marriage of Johnson (1994), 266 Mont. 158, 879 P.2d 689. A court may terminate a prior joint custody decree upon satisfaction of the prerequisites in § 40-4-219, MCA.

The requirements of § 40-4-219, MCA, are jurisdictional prerequisites to terminating joint custody. Marriage of Johnson, 879 P.2d at 694; In re Marriage of Starks (1993), 259 Mont. 138, 855 P.2d 527; Gianotti v. McCracken (1977), 174 Mont. 209, 569 P.2d 929.

In the present case the District Court awarded Laura Heine sole legal custody on the basis of a finding of endangerment pursuant to § 40-4-219(1)(c), MCA, which provides:

> (1) The court may in its discretion modify a prior custody decree if it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of entry of the prior decree, that a change has occurred in the circumstances of the child or the child's custodian and that the modification is necessary to serve the best interest of the child and if it further finds that:
> . . . .
> (c) the child's present environment endangers seriously the child's physical, mental, moral, or emotional health and that the harm likely to be caused by a change of environment is outweighed by its advantages to the child . . . .

Strict compliance with this statutory scheme is necessary to provide for the continuity and stability of children's living

5

arrangements. Marriage of Johnson, 879 P.2d at 694.

We hold that the District Court's finding that David Heine was seriously endangering the children is unsupported by the facts and clearly erroneous and therefore the District Court did not have jurisdiction to terminate joint custody and award Laura Heine sole legal custody of the parties' two children.

The parties and witnesses presented conflicting testimony regarding the care the children were receiving in both parents' homes. There was conflicting testimony regarding whether the children received help with their homework while at David and Detta Heine's home. There were allegations that Laura Heine and her ex-boyfriend abused Jenna on two separate occasions. There were allegations that Detta Heine was a bad influence on the children. However, there was no evidence presented that the children were endangered while in the custody of David and Detta Heine. While it is a general rule that it is the trier of fact's function to resolve conflicts in the testimony presented, Marriage of Starks, 855 P.2d at 530, the district court's findings of fact must be based on substantial and credible evidence, Marriage of Dreesbach, 875 P.2d at 1021, and the district court's interpretation of the law must be correct, Carbon County, 898 P.2d at 686.

The District Court based its holding that David Heine was a danger to his children, in part, on the finding that Detta Heine was a bad influence on the children and, specifically, that she coached the children to falsely accuse Laura of abusing them. However, there was also evidence presented that DFS received

6

reports from other sources, of alleged abuse by Laura, before Detta Heine made her reports to DFS and before Detta brought the children in to be interviewed by counselors at DFS. While at DFS, Detta Heine allegedly refused to allow Jenna to be interviewed alone. Detta testified that she became concerned about the competency of the counselors at DFS, after Jenna had allegedly told Detta that the counselor Jenna had just spoken with had suggested that Jenna was not telling the truth. In addition to testimony that Detta Heine improperly coached the children's reports to DFS, the court also heard testimony that Detta Heine had a close and healthy relationship with the children.

While a step-parent's conduct has been held to create endangerment sufficient to warrant termination of joint legal custody, Detta's alleged transgressions, even if true, do not rise to the level of endangerment presented in other cases. See, e.g, In re Marriage of Anderson (1989), 240 Mont. 316, 783 P.2d 1372 (holding that a "hostile, siege-like" environment created by the step-father, met the standard of serious endangerment). Although the court concluded that Detta Heine exercised more influence over the children than is appropriate, this conclusion does not support a finding that the children were seriously endangered in their father's custody.

No evidence was presented that David Heine himself posed a danger to his children. The court services investigator found that David Heine and his children had a loving and caring relationship and recommended joint custody. At trial, Laura Heine agreed with

the recommendations of the court services investigator and stipulated to the fact that David Heine was "a fit and proper parent." Laura Heine admits in her brief that "David is a good father" who "is entitled to generous and liberal visitation."

The court found that David Heine was endangering his children, in part, on the basis that he failed to cooperate with court services in undergoing a psychological evaluation. However, the record does not support this finding. Laura Heine concedes that David Heine did see a psychologist. She merely claimed that David did not see the same psychologist as the rest of the family, as recommended by the court services investigator. Additionally, the court services investigator indicates in the report that she relied on psychological evaluations of David performed in 1993 and 1995. Moreover, even if David Heine failed to see the psychologist, this failure would not prove that he was endangering the children.

The District Court also found that David Heine was endangering his children on the basis of his use of incredible witnesses. The court rejected the testimony of Laura Heine's ex-boyfriend, Chris Blount, as incredible, on the basis of Blount's involvement in other litigation, his alleged financial debt to David Heine and on his general demeanor while testifying. The court did not specify anything particular about Blount's demeanor that led it to believe Blount was fabricating his testimony. More importantly, while the court has discretion to discount the testimony of certain witnesses, the fact that David Heine presented a witness that the court did not find credible does not support the court's finding

8

that David Heine was a danger to his children.

Finally, the court relied on David Heine's courtroom behavior in finding that he was a danger to his children. However inappropriate David Heine's conduct of slapping the counsel table and glaring at Laura Heine on the witness stand at the end of the hearing may have been, it does not warrant a finding of endangerment to the children. Furthermore, the court did not issue David Heine a citation for contempt of court. The court's comment was, "if looks could kill, it would be -- I don't know who it is directed at, but I find it very frightening." The District Court did not have the discretion to punish David for an isolated inappropriate outburst in the courtroom by terminating his rights as a custodial parent.

In cases where this Court has found substantial evidence to support a district court's finding of serious endangerment, the records reflect that the allegations of endangerment are considerably more serious and better substantiated than the allegations in the present case. See, e.g., In re Marriage of Miller (1992), 251 Mont. 300, 825 P.2d 189 (holding that the custodial parent's uncooperative and antagonistic attitude towards her children's teachers and school authorities, her alcohol abuse and DUI conviction, and driving with her children while intoxicated, frequent moves, and refusal to allow visitation to the non-custodial parent, warranted a finding of serious endangerment and a modification of the custodial arrangement); Marriage of Anderson, 783 P.2d 1372 (holding that a step-father created a

9

"hostile, siege-like" environment, thus meeting the standard of serious endangerment); In re Marriage of Morazan (1989), 237 Mont. 294, 772 P.2d 872 (holding that frequent moves of the custodial parent, removal of the children from school mid-term, and allegations of sexual abuse in the custodial parent's home warranted a finding of endangerment).

The most serious allegations in the present case were made against Laura Heine, not David Heine. Despite the allegations, the court services investigator found that both parents exhibited caring and loving relationships with their children. There was no evidence presented that the children were seriously endangered in the custody of David Heine.

### Conclusion

We conclude that the evidence at the hearing did not establish that the children's environment in David Heine's home seriously endangered their physical, mental, moral, or emotional health. Therefore, we conclude that there was not substantial evidence to satisfy the jurisdictional prerequisite in § 40-4-219(1)(c), MCA, and, as a result, the District Court did not have jurisdiction to alter the joint legal custody arrangement provided for in the decree of dissolution.

The judgment of the District Court is reversed and this case is remanded to the District Court to determine the primary residential custody of the children. The question remains as to the proper standard under which that determination must be made.

We note that the decree of dissolution incorporated the

10

separation agreement which gave temporary residential custody to Laura Heine during the divorce proceedings. In the separation agreement the parties expressly reserved the right to establish permanent primary residential custody at a later date. Therefore there is no existing decree of custody to "modify" under § 40-4-219, MCA. See In re Marriage of Zuelke (1995), 274 Mont. 362, 909 P.2d 684 (holding that a court-ordered phase-in of equal custody contemplated by the decree of dissolution was not a modification of custody and thus § 40-4-212, MCA, was the proper standard by which to determine the custodial arrangement).

In the District Court's findings and conclusions, awarding Laura with sole custody, the court found that "[b]oth parties testified at trial that week to week visitation was not in the best interests of the children. The court finds that week to week visitation is not in the best interests of the children." The testimony at the hearing indicates that the parties were not seeking a "modification" under § 40-4-219, MCA, but that the parties understood this to be the first court-ordered decree of permanent primary residential custody. Under these circumstances we hold that primary residential custody of the parties' children should be determined pursuant to the best interests of the child standard in § 40-4-212, MCA.

Reversed and remanded.

_W. William Burphert_
Justice

11

We concur:

J. A. Turnage
Chief Justice

William E. Hunt Sr.

_____

Karla M. Gray
Justices

12