No. 97-174

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


IN RE THE MARRIAGE OF

JEFFREY WILFORD HUOTARI,

Petitioner and Appellant,

and

BRENDA MARIE HUOTARI n/k/a
BRENDA M. COPELAND,

Respondent and Respondent.


APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Broadwater,
The Honorable Dorothy McCarter, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

David N. Hull, Attorney at Law, Helena, Montana

For Respondent:

Dennis G. Loveless, Attorney at Law, Helena, Montana


Submitted on Briefs: July 31, 1997

Decided:   August 26, 1997
Filed:


_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

This appeal is taken from the findings of fact, conclusions of law and order entered by the First Judicial District Court, Broadwater County, on post-dissolution motions filed by Jeffrey Wilford Huotari (Jeff) pertaining to child custody and child support. We affirm in part, reverse in part and remand.

Jeff raises two issues on appeal:

1. Did the District Court abuse its discretion by failing to extend the temporary custody order?

2. Did the District Court err in addressing the merits of Jeff's motion to modify custody and support?

BACKGROUND

Jeff and Brenda Marie Huotari, now known as Brenda M. Copeland (Brenda), married in 1988. Their marriage was dissolved on June 17, 1991. The District Court adopted and incorporated the parties' Property and Child Custody Agreement (Agreement) in its decree of dissolution and, pursuant thereto, awarded Jeff and Brenda joint custody of Jacob, their minor son. Brenda was designated Jacob's primary residential custodian, subject to reasonable visitation by Jeff. The Agreement also provided that the parties anticipated that Brenda might be moving from Montana in the future and, in the event such a move was contemplated, Jeff and Brenda would attempt to renegotiate a visitation schedule commensurate with the new living arrangements; absent agreement by the parties, the District Court was authorized to review and modify the child custody and visitation provision. In no event could Brenda move Jacob's residence out of Montana without a visitation schedule being established by either agreement or court modification.

On July 17, 1996, Jeff moved the District Court to modify the child custody provisions of the dissolution decree. His supporting affidavit stated that Brenda had joined the United States Army, leaving Jacob with him, and that Jacob had been integrated into his family with Brenda's full knowledge and consent. On the basis of the requested modification of custody, Jeff also sought modification of his child support obligations and of the income tax exemption provision of the decree.

Approximately one month later, Jeff moved for an ex parte temporary custody order "pursuant to 40-4-219 M.C.A. and 40-4-220(2)(ii) [sic]" and order to show cause. He asserted that Brenda's mother had taken Jacob from his custody nine weeks after Brenda left the child with him and that she refused to return the child to him. Jeff's supporting affidavit asserted that an immediate change of custody would serve to protect the child's physical or emotional health.

The District Court issued a temporary order and order to show cause which granted Jeff temporary custody of Jacob and scheduled a show cause hearing on the matter for September 6, 1996. On the day of the hearing, Brenda filed a motion to dismiss Jeff's July motions relating to modification of custody and support and his ex

parte motion for temporary custody. At the conclusion of the hearing, the District Court ordered that the temporary custody order would remain in effect until further order of the court.

The District Court's findings, conclusions and order were filed on October 30, 1996. In pertinent part, the court determined that it was in Jacob's best interest that Jeff retain physical custody for the remainder of the 1996-1997 school year and that Jeff and Brenda each would have Jacob for one-half of the summer in 1997; thereafter, Brenda would resume physical custody of Jacob in accordance with the earlier Agreement and the decree. The District Court concluded that there was insufficient evidence to establish a change in circumstances that seriously endangered Jacob's well-being and that, notwithstanding the existence of  40-4-219(1)(f), MCA, Jeff had not satisfied the requirements for modification of custody since Brenda's out-of-state move was contemplated by the parties' Agreement and the dissolution decree. Jeff appeals.

## STANDARD OF REVIEW

We review a district court's findings of fact relating to child custody and visitation matters to determine whether the findings are clearly erroneous. In re Marriage of Dreesbach (1994), 265 Mont. 216, 220-21, 875 P.2d 1018, 1021 (citation omitted). We will not overturn the district court's decision unless a clear abuse of discretion is shown. Marriage of Dreesbach, 875 P.2d at 1021 (citation omitted).

## DISCUSSION

1. Did the District Court abuse its discretion by failing to extend the temporary custody order?

A party seeking an ex parte temporary custody order must satisfy statutory requirements. When seeking a temporary assignment of custody ex parte in a case in which a determination of custody previously has been made, the party must submit an affidavit showing that "the child's present environment endangers his physical or emotional health and an immediate change of custody would serve to protect the child's physical or emotional health." Section 40-4-220(2)(a)(ii), MCA. If the district court finds from the affidavit that the child's physical or emotional health is endangered and would be protected by a temporary assignment of custody, the district court must enter a temporary custody order; in such an event, the court must require all parties to appear and show cause within 20 days why "the court should not restore the child to the custodian from whom the child was removed by the temporary order." Section 40-4-220(2)(b), MCA.

Here, Jeff submitted the required affidavit and the District Court entered the temporary custody order and scheduled the show cause hearing. Under  40-4-220(2)(b), MCA, the burden was on Jeff to support a continuation of the temporary change in

custody he had obtained ex parte. At the conclusion of the hearing, the District Court ordered that the temporary custody order would remain in effect. As a result, Jeff retained temporary custody of Jacob until the District Court entered its findings, conclusions and order on October 30, 1996, and, indeed, retained custody pursuant to the October order through the end of Jacob's 1996-1997 school year.

Jeff asserts that the District Court erred in failing to extend the temporary custody order until a hearing was held on his 40-4-219, MCA, motion to modify custody. He cites to no legal authority which supports the proposition that a temporary custody order obtained ex parte must be continued until a hearing is held on a separate motion to modify custody and, as a result, we do not address this portion of his argument. See Rule 23(a)(4), M.R.App.P.

Jeff also contends that Brenda's failure to comply with the 30-day notice requirement contained in 40-4-217(4) and 40-4-217(5), MCA, was sufficient as a matter of law to require an extension of the temporary order. This contention is entirely without merit.

Section 40-4-217(4), MCA, requires a custodial parent to give written notice to a noncustodial parent with visitation rights of his or her intent to change a minor child's residence to another state. The purpose of the notice requirement, which must be given at least 30 days before the intended change in residence, is "to allow the noncustodial parent to seek a modification of the parent's visitation schedule." Section 40-4-217(5), MCA. Without regard to whether any nexus exists between this notice requirement and show cause hearings on temporary custody orders obtained ex parte, 40-4-217(4) and 40-4-217(5), MCA, are inapplicable here. Brenda had not changed Jacob's residence to another state at the time of the proceedings at issue and, according to the record before us, she did not intend to do so within 30 days.

Nor is Jeff's reliance on In re Marriage of Morazan (1989), 237 Mont. 294, 772 P.2d 872, well placed. In that case, we affirmed a district court's issuance of a temporary restraining order to prevent a parent from removing children from the jurisdiction of the court pending modification of custody proceedings. Marriage of Morazan, 772 P.2d at 874. The case did not involve either the notice requirement contained in 40-2-217(4), MCA, or a show cause hearing on a temporary custody order obtained ex parte. Moreover, Jeff did not seek a temporary restraining order in this case. Marriage of Morazan is inapplicable here. Finally, Jeff's contentions in this regard aside, we observe that the District Court effectively extended the temporary custody order Jeff had obtained ex parte until the summer of 1997 in an effort to avoid further disruption to Jacob. We hold that the District Court did not abuse its discretion with regard to the temporary custody situation.

2. Did the District Court err in addressing the merits of Jeff's motion to

modify
custody and support?

It is clear that the District Court resolved the merits of Jeff's motion to modify custody and support in its order of October 30, 1996, concluding that the 40-4-219, MCA, requirements for modification were not satisfied. Jeff contends that the District Court erred in addressing his motion to modify when the sole purpose of the September 6, 1996, hearing was to determine whether to continue the temporary custody order Jeff had obtained ex parte. We agree.

As set forth above, Jeff filed two motions in this case. His first motion, filed pursuant to 40-4-219, MCA, was a motion to modify child custody and support. His second motion, for an ex parte temporary custody order and order to show cause, necessarily was filed pursuant to 40-4-220(2)(a)(ii), MCA. The District Court granted the latter motion and issued an order setting a show cause hearing on "the temporary order" for September 6, 1996. At that point, it was clear that the show cause hearing was limited to determining whether the temporary custody order granted ex parte should remain in effect.

Nor did the focus of the hearing change at the hearing. Jeff's counsel opened the hearing by stating that the hearing was set "on a temporary order and order to show cause." The District Court queried "[s]o we are here on temporary custody?" and Jeff's counsel responded "your Honor, that being done, we have a[n unrelated] procedural question" relating to Brenda's motion to dismiss. The subject of the scope of the hearing arose again later, when the District Court recapped that Jeff had filed a "second motion" and that was "the motion for temporary custody that is being heard here today, is that correct?" Jeff's counsel responded in the affirmative. Still later, the District Court again inquired "is this a hearing on temporary custody?" Again, Jeff's counsel responded "[t]hat is correct." Finally, the Minute Entry regarding the hearing indicated that "[t]his was the time set for the Order to Show Cause hearing in the above-entitled cause."

On this clear and unambiguous record regarding the scope of the September 6, 1996, hearing, we must conclude that the sole purpose of that hearing was to address whether the temporary custody order Jeff obtained ex parte was to remain in effect. Notwithstanding, the District Court's October 30, 1996, findings, conclusions and order also denied Jeff's 40-4-219, MCA, motion to modify child custody and support on the merits.

Brenda attempts to support the District Court's action by arguing that Jeff"s motion for temporary custody cited 40-4-219, MCA, as well as 40-4-220, MCA, thereby

giving "the District Court license to make a determination on the modification of the custody provisions contained in the decree of dissolution." It is true that Jeff's motion for temporary custody and memorandum in support thereof reference the "endangerment" provision in both statutes. It also is true, however, that the standard to be met in seeking temporary custody ex parte where a previous custody determination has been made is whether the child's present environment endangers his or her physical or emotional health and an immediate change of custody would protect that health. See 40-4-220(2)(a)(ii), MCA. Thus, while Jeff's motion for an ex parte temporary custody order and supporting affidavit were not as clear as they might have been, the record remains clear and unambiguous that the September 6, 1996, hearing was held for the sole purpose of determining whether to continue the temporary custody order.

Brenda also contends that the District Court merely "entered an order which effectively encompassed the entire custody issue by including a ruling on both motions."

While this contention about what the District Court did is correct, it begs the question of whether the District Court acted properly. We conclude that it did not. In marital cases, as in other cases, the essential elements of due process are notice and an opportunity to be heard. See In re Marriage of Robbins (1985), 219 Mont. 130, 138, 711 P.2d 1347, 1352. Here, Jeff received neither notice nor an opportunity to be heard on his motion to modify child custody and support. Thus, while it may be difficult, at best, for Jeff to make the showing required for modification of custody under 40-4-219, MCA, the point is not whether Jeff ultimately can make the requisite showing, but that he must be provided a fair opportunity to do so prior to the time a decision is rendered on his motion to modify child custody. The procedure utilized by the District Court here, however well intentioned, did not provide such an opportunity. By going beyond the matter before it, the District Court denied Jeff's right to procedural due process in violation of Article II, Section 17 of the Montana Constitution. See Lurie v. Sheriff of Gallatin County (Mont. August 14, 1997), No. 97-132, slip op. at 12.

We hold that the District Court abused its discretion in addressing the merits of Jeff's motion to modify custody after a hearing held for the sole purpose of determining whether the temporary custody order he had obtained ex parte should be continued.

As a result of our conclusion on the second issue in this case, a remand is necessary for further proceedings on Jeff's motion to modify. During the pendency of those proceedings, Jacob is to remain in Brenda's primary physical custody in order to prevent any unnecessary disruption in the stability of his living arrangements.

Affirmed in part, reversed in part and remanded for further proceedings consistent
with this opinion.

/S/  KARLA M. GRAY

We concur:

/S/  WILLIAM E. HUNT, SR.
/S/  JIM REGNIER
/S/  JAMES C. NELSON
/S/  TERRY N. TRIEWEILER