No. 04-626

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 98N

IN RE THE MARRIAGE OF

ZACHARY PATRICK HANNUM,

      Petitioner and Appellant,

   and

DALLAS ANN HANNUM (OTT),

      Respondent and Respondent.

APPEAL FROM:    The District Court of the Twentieth Judicial District,
                In and For the County of Sanders, Cause No. DR 2001-09,
                Honorable C. B. McNeil, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Linda Osorio St. Peter, St. Peter & Warren, P.C., Missoula, Montana

      For Respondent:

          William P. Driscoll, Franz & Driscoll, PLLP, Helena, Montana

                          Submitted on Briefs:  February 16, 2005

                                   Decided:  April 19, 2005

Filed:

_____
                        Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2    Zachary Hannum (Zach) appeals from the District Court's grant of custody and denial of child support. We affirm.

¶3    We address the following issues on appeal:

¶4    1. Whether the District Court erred in finding that the children wish to reside primarily with their mother.

¶5    2. Whether the District Court erred in finding that Dallas's mental health has improved substantially since the Interim Parenting Plan.

¶6    3. Whether the District Court denied Zach procedural due process in not allowing him to reintroduce evidence.

¶7    4. Whether the District Court erred in concluding that it is in the best interests of the children if they reside primarily with their mother.

¶8    5. Whether the District Court erred in not awarding Zach child support.

### FACTUAL AND PROCEDURAL BACKGROUND

¶9    Zach and Dallas Hannum (Dallas) married on December 31, 1996. The couple lived in Trout Creek for much of their marriage and are the proud parents of two daughters, born

2

in 1997 and 1998. While together, the couple operated a tree broker business. Since separating in 2000 Zach has continued to operate the business, while Dallas has gone back to school and now works as a receptionist in a Polson law firm.

¶10 The parties presented the evidence in this matter in two different proceedings. First, the District Court heard testimony in early 2003 and thenceforth issued an Interim Parenting Plan, granting primary custody of the children to Zach. Then, the court held another proceeding in March 2004, hearing additional evidence and incorporating the testimony presented in the earlier proceeding. It then issued its final decree on May 19, 2004, granting primary custody of the children to Dallas.

¶11 Since the separation the children have at times lived in the primary custody of each parent. The older child attended kindergarten and the younger child attended pre-school in Polson until the District Court issued the Interim Parenting Plan. From that time the children attended school in Trout Creek. Both children continued to reside primarily with Zach in Trout Creek until the District Court issued its final decree, granting primary custody to Dallas, on May 19, 2004.

¶12 The record shows that while the couple was together, Dallas was often very despondent and received a good deal of counseling. She alleged that she wanted Zach to engage in the counseling with her but that he only attended three counseling sessions. Zach introduced testimony that at times Dallas was unable to care for the children because of her despondency. Furthermore, it is uncontested that Dallas attempted to commit suicide at one point. Dallas attempted to counter Zach's characterization of how her mental health affected

her parenting during their marriage. Further, she testified that her despondency was primarily caused by Zach's inattention as a husband. In the 2004 proceeding many witnesses testified that, having observed Dallas since the couple separated, they could conclude she is currently a sound, effective, and loving parent. Neither side presented evidence that Dallas currently has any emotional problems.

¶13 In its Interim Parenting Plan the District Court found that Dallas "did not dispute [Zach's] testimony that [the children] both wish to live with their father and attend school in Trout Creek." However, in the findings of fact of the subsequent final decree the court found that "[t]he children wish to live primarily with their mother . . . during the school year and with their father . . . during the summer school vacation." It also found that Dallas "had some severe emotional problems, which have improved substantially since the February 13, 2003 Interim Parenting Plan . . . ."

¶14 Furthermore, the court made a few findings attendant to its final decree that arguably point to Zach as the more appropriate primary custodian. In Finding of Fact No. 11h, the court stated that "[i]f [Dallas] is designated the primary residential custodian, she is more likely to deny the children frequent and continuing contact with [Zach]; that if [Zach] is designated the primary residential custodian during the school year, he is more likely to allow frequent and continuing contact with [Dallas]." The court also found that the older child was well adjusted to her school in Trout Creek, and that the children "have a good relationship with their paternal grandparents and extended family in the vicinity of [Zach's] residence in Trout Creek." The court said nothing about the children's relationship with

4

Dallas's family. Nonetheless, the court concluded that the children should reside primarily with Dallas.

¶15    Zach now appeals the grant of primary custody to Dallas as well as the court's conclusion to not award child support to either party.

**STANDARD OF REVIEW**

¶16    In child custody matters, we review the findings of a district court to determine whether they are clearly erroneous. *Czapranski v. Czapranski*, 2003 MT 14, ¶ 10, 314 Mont. 55, ¶ 10, 63 P.3d 499, ¶ 10. "If clear error is not apparent, we will uphold the decision below unless the court abused its discretion." *Bock v. Smith*, 2005 MT 40, ¶ 14, 326 Mont. 123, ¶ 14, 107 P.3d 488, ¶ 14 (citing *McDermott-Yeargin v. McDermott*, 2003 MT 283, ¶ 9, 318 Mont. 13, ¶ 9, 79 P.3d 245, ¶ 9). In addition, we will uphold a district court's conclusions of law in the child custody context "unless they clearly demonstrate an abuse of discretion." *Schiller v. Schiller*, 2002 MT 103, ¶ 24, 309 Mont. 431, ¶ 24, 47 P.3d 816, ¶ 24 (citing *Stoneman v. Drollinger*, 2000 MT 274, ¶ 53, 302 Mont. 107, ¶ 53, 14 P.3d 12, ¶ 53).

¶17    In determining a child's custody, a district court must do so using the best interests of the child standard. *Czapranski*, ¶ 11. Section 40-4-212(1), MCA, enumerates a number of nonexclusive factors that the court must consider when determining what is best for the child. "While a court must consider the factors enumerated in § 40-4-212(1), MCA, it need not make specific findings relating to each." *Czapranski*, ¶ 11 (citing *In re Marriage of Fishbaugh*, 2002 MT 175, ¶ 20, 310 Mont. 519, ¶ 20, 52 P.3d 395, ¶ 20).

5

# DISCUSSION

## ISSUE ONE

¶18 *Whether the District Court erred in finding that the children wish to reside primarily with their mother.*

¶19 At trial, neither of the children testified. However, Dallas testified that the children had told her that they wished to reside primarily with her. Zach himself testified that the children had told him that they wanted to go to school in Polson, where Dallas lives. Zach presented this testimony in an effort to illustrate that the children had been "coached" by their mother, and he makes that argument again here on appeal. Zach also proffered testimony from the children's counselor, who stated that, considering their young age, their stated wishes should not be the primary determinant of where they reside. In addition to his "coaching" argument, Zach points out that in the Interim Parenting Plan, just a year earlier, the District Court found that the children desired to reside primarily with him. "[A]t the very least," he argues, this "confirms the children's counselor's opinion that they are too young to make such a decision . . . ."

¶20 Zach argues that the court's finding as to the children's desire to live with their mother is inconsistent with the court's previous finding (in the Interim Parenting Plan) that they preferred to live with their father. This argument, of course, ignores the fact that the expressed preference for the mother's residence was new evidence–occurring after the Interim Parenting Plan.

¶21 Zach further argues that under § 40-4-219(c), MCA, a district court can only consider the wishes of a child when amending a prior parenting plan if the child is at least fourteen years of age. However, as Dallas points out, § 40-4-219(c), MCA, only applies to amendments of *final* parenting plans and not to interim parenting plans. In first adopting a final parenting plan, the court uses the best interests of the child standard of § 40-4-212, MCA, which includes consideration of the child's wishes even when he or she is younger than fourteen. We hold that § 40-4-219(c), MCA, has no bearing on the District Court's initial determination of best interests.

¶22 Zach finally contends that Dallas's testimony regarding the children's wishes is hearsay. However, Zach's trial counsel did not object to this testimony in the District Court. Therefore, Zach did not preserve this objection for our review. *See Busta v. Columbus Hosp. Corp.* (1996), 276 Mont. 342, 353-54, 916 P.2d 122, 129. We conclude that the court's finding regarding the children's wishes was not clearly erroneous and that the court did not abuse its discretion.

### ISSUE TWO

¶23 *Whether the District Court erred in finding that Dallas's mental health has improved substantially since the Interim Parenting Plan.*

¶24 As stated above, while the couple lived together, Dallas was often so despondent that her mental condition may have interfered with her parental duties, and, in the Interim Parenting Plan, the District Court concluded as much. However, in the Findings of Fact of

the Final Decree, the court found that Dallas's emotional problems had "improved substantially." Zach contends that there is no evidence for this latter finding.

¶25    Zach cites instances of Dallas's emotional problems while the two were together, including her suicide attempt and times where she would breakdown crying and be unable to tend to the children's needs. However, Zach ignores the absence of any such incidents since the separation and the testimony of numerous witnesses in the March 2004 proceeding who attested to Dallas's excellent and level-headed recent performance as a mother. The District Court's finding was supported by substantial credible evidence that Dallas's mental health has improved. That finding was not clearly erroneous, and the court did not abuse its discretion.

### ISSUE THREE

¶26    *Whether the District Court denied Zach procedural due process in not allowing him to reintroduce evidence.*

¶27    Zach argues that there was no evidence of a change in circumstances sufficient to justify a change in the parenting plan under § 40-4-219, MCA. However, as we stated above, § 40-4-219, MCA, does not apply in this situation as that provision only applies to changes in final parenting plans, not interim parenting plans. In the alternative, Zach argues that he was denied procedural due process because the court did not allow him to reintroduce evidence from the 2003 proceeding (which preceded the Interim Parenting Plan) in the 2004 proceeding. At the commencement of the latter proceeding the court stated, "The Court will remind both parties that there was an extensive prior hearing in this matter held in January

9

of 2003. That testimony, that evidence, is in the record and is already before the Court for this proceeding. You need not duplicate."

¶28 Zach states, "If the Court did not intend this trial to constitute a modification of its earlier parenting plan then [Zach] has been denied the opportunity to present his full case by calling all of his witnesses and submitting all of his evidence at the March 8, 2004 trial." The only case he cites for this procedural due process claim is *In re Marriage of Huotari* (1997), 284 Mont. 285, 943 P.2d 1295. This claim is without merit. First, *Huotari* involved a district court addressing issues beyond the scope of what was presented to the court. *Huotari*, 284 Mont. at 290-92, 943 P.2d at 1298-99. Here, on the other hand, the court ruled on precisely the issues before it–child custody and child support. Second, as is painfully obvious, the parties had already presented the evidence Zach complains he was not able to present for a second time. That evidence was before the court and there is no reason to believe the court ignored it. Zach does not argue that he would have somehow presented this evidence differently had he been allowed to "introduce" it a second time. He merely asserts, "All of the witnesses except for himself, his sister and the children's counselor, were [Dallas's] witnesses" in the 2004 proceeding.

¶29 This is not a constitutional argument. This, if anything, is a *post hoc* excuse for failing to call more witnesses. As discussed above in Issues One and Two, the witnesses Dallas called, including herself, presented evidence that justified the court's findings that Zach now challenges. Zach may now wish that he had done things differently but his procedural due process rights were not denied.

10

¶30 *Whether the District Court erred in concluding that it is in the best interests of the children if they reside primarily with their mother.*

¶31 Zach places great emphasis on the apparent conflict between the District Court's Finding of Fact No. 11h, which states that Dallas will be more likely than Zach to deny the children's visitation with the other parent, and Conclusion of Law No. 3, which refers to the parenting plan making Dallas the primary residential parent. Given that the court specifically found that Dallas is more likely to deny visitation, and given that there are no findings that Zach is an unsuitable parent, Zach argues that Conclusion of Law No. 3 simply does not follow from the findings. Zach also points out that the court found that the children have a good relationship with his family but did not make a similar finding regarding Dallas's family. Further, the court found the older child is well adjusted to her school in Trout Creek.

¶32 Aside from the finding that Dallas's mental health has improved (which merely places her at parity with Zach's unquestioned mental health), the only finding of fact which weighs against awarding Zach primary residential custody is that discussed in Issue One–that the children wish to reside with their mother. Section 40-4-212(1), MCA, enumerates several factors the court may consider when awarding custody. One of those factors is the child's wishes; another is the child's relationship with "any other person," such as extended family; a third is "the child's adjustment to home, school, and community;" and a fourth is "whether the child has frequent and continuing contact with both parents . . . ." We can infer from the court's Conclusion of Law No. 3 that it placed more weight on the children's wishes than

11

on extended family ties, adjustment to school, and the possibility that Dallas might deny Zach visitation.

¶33    Aside from citing to § 40-4-219, MCA (which we have concluded is irrelevant to this matter), Zach does not refer to any authority that supports the proposition that the District Court abused its discretion when it implicitly concluded that the children's wishes outweigh the factors that arguably favor granting primary residential custody to him.  Zach points to the testimony of the children's counselor, who opined that the wishes of the children should not carry very much weight because of their young age.  However, given our deference to district court rulings in evidentiary matters, we conclude there was no abuse of discretion when the District Court declined to adopt the counselor's opinion.  *In re Marriage of McKenna*, 2000 MT 58, ¶ 17, 299 Mont. 13, ¶ 17, 996 P.2d 386, ¶ 17.  We therefore hold that the District Court did not abuse its discretion in concluding that it is in the best interests of the children if they reside primarily with Dallas.  Section 40-4-212(1), MCA.

## ISSUE FIVE

¶34    *Whether the District Court erred in not awarding Zach child support.*

¶35    The District Court found that each parent earns a very modest income.  It found Zach earns $12,200 a year, and that Dallas makes $7.00 per hour while working an average of 35 hours per week.  Neither parent challenges these findings.  Zach does, however, challenge a related finding that he has a greater earning potential than Dallas because he only works an average of twenty hours per week.  We find no reason to disturb this last finding.  Further, considering that Dallas, not Zach, is the primary custodial parent, and that the two parents

12

make a comparable income, we conclude that there is no reason to disturb the District Court's conclusion to not award child support to Zach.

## CONCLUSION

¶36    The District Court's Findings of Fact were not clearly erroneous and it did not abuse its discretion in awarding primary residential custody of the children to Dallas or in declining to award child support.  We affirm the judgment of the District Court.

/S/ W. WILLIAM LEAPHART

We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ PATRICIA O. COTTER

Justice James C. Nelson concurs.

¶37    I concur in our Opinion.  I agree that we have correctly articulated the applicable law and I am not convinced that sending this case back would produce any different result.

¶38    That said, the trial court's inconsistent findings referred to in ¶¶ 13 and 31 are troubling.  They do not mesh with the court's decision or ours.  Notwithstanding, the children are placed with one of two parents who are equally loving and capable.  As noted, sending this back to have the District Court clean up its decision would likely be a waste of time.

¶39    Therefore, I concur.

/S/ JAMES C. NELSON

13